Michael Clark, a minor, and his parents, Tillman and Carolyn Clark, appeal from a judgment based on a jury verdict in their favor and against Tommie Black in the Clarks' action seeking compensation based on personal injuries incurred in an automobile-motorcycle accident. We reverse and remand.
On August 24, 1990, Michael Clark was injured when the motorcycle he was driving collided in the intersection of Union Chapel Road and Watermelon Road, in the vicinity of Tuscaloosa, Alabama, with an automobile driven by Tommie Black. On December 4, 1990, Michael, by and through his parents as next friends, and his parents, individually, sued Black in the Tuscaloosa County Circuit Court. The complaint sought compensation for physical and mental suffering, loss of services and society, and medical expenses, based on alleged negligence; it sought punitive damages, based on alleged wantonness.
The trial began before a jury on July 24, 1992. The trial judge directed a verdict for Black on the claims alleging wantonness. On the claims alleging negligence, the jury returned the following verdict:
 "We, the jury, find the issues in favor of the plaintiffs Michael Clark, a minor, Carolyn Clark, and Tillman Clark and against the defendant, Tommie Maddox Black, and assess plaintiffs' damages as follows:
"Michael Clark $ 5,000.00 Past Damages
 $ 15,000.00 Future Damages
"Carolyn Clark $ 0
"Tillman Clark $ 0"
Subsequently, the Clarks moved for a new trial, setting forth the following grounds:
 "1. Extraneous facts were introduced into the jury's deliberation and were processed and/or used and relied upon by the jury in reaching its decision . . . .
 "2. The amount awarded to Michael E. Clark for past damages, $5,000.00, was inadequate as a matter of law. The amount awarded to Michael E. Clark for future damages, $15,000.00, was inadequate as a matter of law . . . . *Page 1014 
 "3. The jury's verdict in favor of Michael, Tillman, and Carolyn Clark with an award of damages to Michael Clark but without an award of damages to Tillman and Carolyn Clark constitutes an inconsistent verdict as a matter of law.
 "4. The trial court erred in not allowing testimony from the plaintiffs about their lost wages and income resulting from the collision which forms the basis of this suit . . . .
 "5. The trial court erred in allowing evidence and testimony that the . . . medical expenses resulting from this collision were paid by insurance . . . .
 "6. The trial court erred in charging the jury on contributory negligence rather than comparative negligence under either of the proposed comparative negligence instructions submitted by the plaintiffs."
From the denial of this motion, the Clarks appealed.[1] On appeal, they contend that (1) the trial court erred in directing a verdict for the defendant on the wantonness claim, and (2) that the verdict, in which the jury found for all the plaintiffs but awarded the parents no damages, was inconsistent, and, therefore, invalid.
 I. Directed Verdict
Black directs this Court's attention to the fact that the Clarks' motion for a new trial contained no allegation that the trial judge erred in directing a verdict for Black on the wantonness claims. She contends that because the Clarks' appeal is from the order denying their motion for a new trial, the issue whether the trial court erred in directing a verdict in her favor has not been preserved for appellate review. For this proposition, she cites a rule expressed in State v. Ward,293 Ala. 516, 306 So.2d 265 (1975): " 'Where the appeal is from the ruling on the motion for a new trial, that ruling is the onlymatter which is subject to review on appeal, and assignments of error relating to rulings in the trial itself will not be considered unless they were included in the motion for a newtrial.' " 293 Ala. at 517, 306 So.2d at 266 (emphasis added) (quoting Water Works Sanitary Sewer Board v. Norman, 282 Ala. 41, 208 So.2d 788 (1968)).
The rule expressed in State v. Ward was once well established in this state. Jones v. Strange, 289 Ala. 76, 265 So.2d 860
(1972); State v. Moore, 269 Ala. 20, 110 So.2d 635 (1959); Shawv. Knight, 212 Ala. 356, 102 So. 701 (1925); Karter v. Peck Bro., 121 Ala. 636, 25 So. 1012 (1899); and City of Mobile v.Murphree, 96 Ala. 141, 11 So. 201 (1892). In Jones v. Strange, for example, Strange sued Gateway Sporting Goods ("Gateway"), G.E.S. Stores, Inc. ("G.E.S."), Allen Jones, and other persons, seeking compensation for malicious prosecution. The trial court granted G.E.S.'s motion for an affirmative charge, but submitted the claims against Gateway to the jury. The jury returned a verdict for Strange.
Strange moved for a new trial of his claims against G.E.S. and Jones. The trial court granted Strange's motion as to Jones, but denied it as to G.E.S. Holding the propriety of the affirmative charge to be unreviewable, this Court stated:
 "The only grounds asserted by appellant Strange in his motion for a new trial as to defendant G.E.S. is in the following language:
 " '1. For that the verdict of the jury was inconsistent and contrary to the law and evidence before the Court insofar as said verdict acquitted the Defendant, G.E.S. Stores, Inc., a corporation.'
". . . .
 "Having failed, in his new trial motion, to complain of the action of the trial court in giving defendant G.E.S. the general affirmative charge, and the appeal being from [the] ruling on [the] motion for new trial, there is nothing for this court to review with respect to this assignment of error."
289 Ala. at 80, 265 So.2d at 863.
Unquestionably, the rule applied in Jones would preclude our review of the directed verdict in this case. The scope of that rule, however, has been considerably narrowed by the Rules of Appellate and Civil Procedure, a fact first noted in Reach v. *Page 1015 Reach, 378 So.2d 1115, 1116-17 (Ala.Civ.App. 1979), cert.denied, 378 So.2d 1118 (Ala. 1980). In that case, which involved an appeal from a judgment increasing an award of child support, the Court of Civil Appeals stated:
 "As a preliminary matter we note that the wife contends this court is limited in its scope of appellate review to those matters contained in the order from which the husband appealed, i.e., the order denying his motion for a new trial. It is argued that because the husband designated that he was appealing from this order in his notice of appeal, such designation precludes appellate inquiry into other matters which, although properly preserved as error below, were not asserted as grounds for reversal in the motion for a new trial. Although this was once the law of Alabama, see State v. Ward, 293 Ala. 516, 306 So.2d 265 (1975), under our Rules of Appellate Procedure, it is not so today.
 "Rule 3(c), ARAP, expressly requires, among other things, that the notice of appeal designate the judgment, order, or part thereof appealed from. However, the rule further provides that 'such designation of judgment or order shall not . . . limit the scope of appellate review.' . . . [I]n addition, pursuant to Rule 4(a)(3), any error which was asserted in the trial court may be raised on appeal without regard to whether such error was raised by post trial motion. Rule 4(a)(3), ARAP."
(Emphasis added.) This Court later agreed with the conclusion and rationale of Reach, qualifying it only to say that "[e]xcept in rare instances (e.g., sufficiency of theevidence), errors asserted at trial may be raised on appeal without regard to whether such errors were raised, or whether adverse rulings were invoked, in the motion for new trial."McGough v. Slaughter, 395 So.2d 972, 975 (Ala. 1981) (emphasis added).
The issue, therefore, may be stated as whether the plaintiffs, who in a motion for a new trial challenged, on grounds of inadequacy and inconsistency, a favorable jury verdict on their negligence claims, failed to preserve for appellate review the propriety of the trial court's action in directing a verdict for the defendant on the wantonness claim, by omitting to include in their motion for a new trial a ground that would require the trial judge to revisit the issue of thesufficiency of the evidence of wantonness. More briefly stated, does this case fall within McGough's parenthetical qualification? To resolve this issue, we must briefly review the rule that requires a party, as a prerequisite to appellate review, to present the trial judge with an opportunity to revisit the issue of the sufficiency of the evidence in a post-trial motion, and the rationale on which that rule is based.
A party initially tests the sufficiency of the evidence on a material factual issue by moving for a directed verdict on that issue. Coburn v. American Liberty Ins. Co., 341 So.2d 717
(Ala. 1977). "In a doubtful case the court may prefer to deny the motion for a directed verdict, [choosing, instead, to consider an] attack on the sufficiency of the evidence subsequently on motion for judgment n.o.v." Ala.R.Civ.P. 50, committee comments. Indeed, "[w]henever a motion for a directed verdict . . . is denied or for any reason is not granted, the court is deemed to have submitted the action to the jurysubject to a later determination of the legal questions raised by the motion." Rule 50(b) (emphasis added).
 "This course gives the court more time to consider the matter[;] the verdict of the jury, if in accord with the judge's own ideas as to the sufficiency of the evidence, may settle the matter, and after verdict the court may grant a new trial on the ground that the verdict is contrary to the great weight of the evidence, instead of directing judgment."
Rule 50, committee comments.
This procedure illustrates the rationale for requiring the unsuccessful directed-verdict movant to renew, through a motion for a J.N.O.V., his challenge to the sufficiency of the evidence. The trial judge "is thus afforded 'a last chance to correct his own errors without delay, expense, or other hardships of an appeal.' " Great Atlantic Pacific Tea Co. v.Sealy, 374 So.2d 877, 881 (Ala. 1979); see also King MinesResort, Inc. v. Malachi Mining Minerals, Inc., 518 So.2d 714
(Ala. 1987). "[I]t is the wisdom of the revisit requirement that the motion for JNOV affords the trial judge a second look at *Page 1016 
the 'insufficiency' ground as a prerequisite for appellate review of the issue." Barnes v. Dale, 530 So.2d 770, 776-77
(Ala. 1988). (Emphasis in original.) Therefore, the unsuccessful movant's failure to present the trial court with an opportunity to revisit the sufficiency of the evidence issue in a motion for a J.N.O.V. precludes appellate reversal of the denial of the motion for a directed verdict. King Mines Resort, Inc., supra.
However, a trial judge does not grant a motion for a directed verdict with a view to reserving the issue for revisitation. On the contrary, he does so with a view to terminating the issue, that is, to "save the time and trouble involved in a lengthy jury determination." 9 C. Wright A. Miller, Federal Practice and Procedure § 2521 (1971).
That the Rules do not, and, logically, need not, contain a JNOV "counterpart" applicable to a party against whom a verdict has been directed, hardly deserves a passing reference. Had the trial court directed a verdict for Black on both theories of recovery in this case, that is, on the wantonness claim and the negligence claim, no post-judgment motion would have been required to preserve the sufficiency-of-the-evidence issues for appellate review. Logic and the policy of the Rules of Civil and Appellate Procedure thus compel us to conclude that this case is not within the sufficiency-of-the-evidence exception expressed in McGough v. Slaughter, 395 So.2d 972 (Ala. 1981). Consequently, we will proceed to review the sufficiency of the evidence of wantonness.
A finding of wantonness requires evidence that the defendant "was conscious of his conduct and conscious from his knowledge of existing conditions that injury would likely or probably result from his conduct [and] that with reckless indifference to consequences, he consciously and intentionally did some wrongful act or omitted some known duty which produced the injury." Lynn Strickland Sales Service, Inc. v. AeroLaneFabricators, Inc., 510 So.2d 142, 145 (Ala. 1987) (quoting Smithv. Roland, 243 Ala. 400, 403, 10 So.2d 367, 369 (1942)).
Black testified that she had travelled through the intersection of Union Chapel Road and Watermelon Road "two or three times a week" for approximately three months before the accident. At the time of the accident, Black was travelling west on Union Chapel Road while Clark was travelling south on Watermelon Road. Traffic on Union Chapel Road was regulated by a stop sign; traffic on Watermelon Road was unregulated. Vision of traffic approaching the intersection was unimpaired by the weather, which was clear; however, on Watermelon Road, just north of the intersection, was a "hillcrest."
The Clarks presented the eyewitness testimony of Heather Kalar, who, like Black, was travelling on Union Chapel Road, but who was approaching the intersection from the west. According to Kalar, she observed both parties "just seconds" before the impact. She testified that Black was "coming across [the] intersection at a very fast speed." She estimated that Black was moving through the intersection at 30 or 40 miles per hour when Clark, who was entering the intersection in the southbound lane of Watermelon Road, collided with the front fender of Black's automobile.
The Clarks contend that this evidence raises an inference of wantonness sufficient to overcome a motion for a directed verdict. We agree. Kalar's testimony presented evidence of such quality and weight that reasonable and fair minded persons could reach different conclusions as to whether the operation of Black's vehicle through the intersection constituted clear and convincing evidence of wantonness. Kalar's testimony, if believed by the jury, would provide clear and convincing evidence that Black, who was familiar with the intersection, and, consequently, the dangers posed to traffic travelling south on Watermelon Road by the "hillcrest" in that road, ignored the stop sign, or, otherwise wantonly entered the intersection. Coca-Cola Bottling Co. United, Inc. v. Stripling,622 So.2d 882 (Ala. 1993); see also Collins v. Shelley,514 So.2d 1358, 1360-61 (Ala. 1987) (testimony that the speed of the defendant's automobile was 20 to 25 miles per hour at the point of impact with the plaintiff in an intersection provided an inference that defendant ran a stop sign, and, consequently, presented a jury question as to wantonness). Consequently, the trial court erred in directing a verdict for Black on the claim alleging wanton conduct. *Page 1017 
 II. Jury Verdict
The jury resolved the liability issue in favor of all three plaintiffs; it awarded Michael $20,000, but awarded hisparents, suing individually, $0, notwithstanding virtually uncontroverted evidence that Michael's medical expenses had exceeded by $5,000 the amount paid or covered by insurance. See generally Ala. Code 1975, § 12-21-45 (abolishing the "collateral source rule"). The Clarks contend that such a verdict was inconsistent as a matter of law, and, consequently, that their motion for a new trial was due to be granted. Black contends that Michael's $20,000 award included compensation for medical expenses, and, therefore, she insists that the verdict is not inconsistent, because, she argues, in the complaint Michael, not his parents, sought compensation for medical expenses.[2] We disagree with Black's contention.
Regardless of the posture of the claims in the complaint for medical expenses, the trial judge, without objection, charged the jury that the parents were entitled to compensation for medical expenses incurred in the treatment of the minor. More specifically, he stated:
 "Now, in this case, you have a suit that is brought by the parents of Michael Clark on his behalf. The evidence in the case is that Michael Clark is a minor and the law requires that the parents sue as next friend of the minor. Therefore, we have the claim of Michael Clark [that] is brought . . . by the parents. Also, we have the claim of the parents, individually.
 ". . . [T]he parents, in their individual rights, are bringing a claim for medical expenses, nursing services provided to the child, and loss of services of their minor child for temporary disability, and loss of services for their minor child for permanent disability.
". . . .
 "The measure of damages for medical expenses is all reasonable expenses necessarily incurred for doctors and medical bills which the plaintiff[s have] paid or become obligated to pay and the amount of reasonable expenses of medical care, treatment, and services reasonably certain to be required in the future. The reasonableness of, and the necessity for, such expenses are matters for your determination from the evidence.
". . . .
 "If you are reasonably satisfied from the evidence that the plaintiff[s] paid, or became obligated to pay, medical expenses for the care and treatment of [their] minor child as a proximate consequence of the negligence of the defendant, then the plaintiff[s] would be entitled to recover the reasonable expense for such care and treatment as shown by the evidence as being reasonably necessary."
(Emphasis added.)
Unchallenged jury instructions become the law of the case.Louisville Nashville R.R. v. Atkins, 435 So.2d 1275
(Ala. 1983). The jury is bound to follow such instructions, even if they are erroneous. Lee v. Gidley, 252 Ala. 156, 40 So.2d 80
(1949) (erroneous instructions became the law of the case, and a judgment entered on the jury's verdict comporting with those instructions would not be reversed on appeal). "A verdict contrary to [the court's instructions] would have to be set aside on motion" of the prejudiced party. New Hampshire FireIns. Co. v. Curtis, 264 Ala. 137, 142, 85 So.2d 441, 446
(1955).[3]
Pursuant to these principles, the jury was bound by the trial court's instructions to award damages to Tillman and Carolyn Clark for medical expenses if it resolved the liability issue in the Clarks' favor. Because *Page 1018 
it so resolved this issue, we hold that the jury's failure to award the parents any amount was inconsistent with the virtually uncontroverted evidence that medical expenses exceeded by approximately $5,000 the amount paid by insurance, and was contrary to the court's instructions. Consequently, the trial court erred in denying the Clarks' motion for a new trial. The judgment of the trial court is reversed, both that portion of it based on the jury verdict and that portion based on the directed verdict, and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and SHORES, HOUSTON, KENNEDY and INGRAM, JJ., concur.
 On Application for Rehearing
PER CURIAM.
OPINION MODIFIED; APPLICATION OVERRULED.
HORNSBY, C.J., and SHORES, HOUSTON, INGRAM and COOK, JJ., concur.
[1] Black has not appealed, but, instead, urges us to affirm the judgment in favor of the Clarks.
[2] Black also argues that the Clarks produced no evidence to support the parents' claim for compensation for loss of services and society. Therefore, she contends, an award for the parents would be inconsistent with the pleadings and the evidence.
[3] Under these principles and the facts of this case, we need not, and, therefore, do not, decide whether the instructions were erroneous. However, because this cause is remanded, it may be helpful to the trial court to observe that the totality of the instructions may have been misleading. Rather than saying: ". . . Michael is a minor and the law requires that the parents sue as next friend," perhaps it would be clearer, and, thus, consistent with the balance of the instructions, to say: "Because Michael is a minor, the law requires that his claim be brought by and through an adult as next friend — in this case, his parents acting as next friend." The object, of course, is to make it clear to the jury that any award in a minor's case belongs to the minor for his injuries and damages, and that any damages to which the parents are entitled must be included in the parents' award.